Your Honor, this is the third case of the morning called 2-11-738. People who stay there in Illinois have to go to the Illinois Department of Health Care and Family Services and Caroline Matthews v. Tyrone Lattimore. On behalf of the appellant, Ms. Phyllis Price. On behalf of the athlete, Ms. Laura Winder. And ladies, I just want to advise you that we do have a third panel member. He is unfortunately unable to be with us today. It's Justice Bowman. He will listen to the arguments and participate in the decision on this case. Ms. Price, you can proceed. Thank you. Good morning. May it please the court? Counsel. Counsel. My name is Phyllis Price and I represent the respondent appellant, Tyrone Lattimore, here in his appeal. The central issue in this case is whether the Circuit Court of DuPage County erred when it dismissed the appellant's petition for 214-01 relief from a default child support order under 2-615. It is our contention that the record shows that this appellant has been diligent in his attempts to present meritorious offenses or claims against the support order entered by the court in that default order and that he diligently filed his 2-1401 petition. How did he proceed with diligence? Well, we contend basically with respect to that, Your Honor. I believe that equity requires a result that he proceeded with diligence. Essentially, under Paul v. Gerald Ailman, due diligence is judged by the reasonableness of petitioner's conduct under all of the circumstances. With respect to proceeding, the appellant petitioner and respondent in that case was attempting to present as soon as he determined and was made aware that a default order had been entered against him. And that did not occur until February or March of 2010, four months after that default order had been entered. What he did was then to attempt to address and to raise the defenses and the claims that he did have. He did not do it, you're right, pursuant to a 214-01 petition. It was a pro se motion that he filed to reduce. And he was attempting to show the details with respect to his financial circumstances, the other children that he had, and all of the other issues and hardships that this order was causing him. The other thing I would note, Your Honor, with respect to the filing, okay, so it was entered in November. He was not made aware of it, and it was not made effective at his job until February or March. So at that time, the order was already in default. Nothing had been done. He was not aware. He could not have paid. His employer had not been made aware. They could not have paid. And so not only was the order entered, default number, default amount of child support, not only was that amount entered, but then shortly thereafter, he was then alleged to be in default of that. And an additional 20% was added on top of it. He never became aware until his wages came into play. That's correct. But he was mailed an income withholding order. Correct. And, yes, so if he sees something happening with his check, as well, he then receives in the mail an income withholding order. But that was three to four months after the default order had been entered. So as soon as he finds that out, he comes right into the court, files a pro se motion two weeks later, and he is in there. I then stepped in two months later to represent him. And so we proceeded diligently to try to present the defenses and claims that we had in connection with that motion to reduce. Counsel, earlier you alluded to something. I believe you made a reference to equitable principles. Yes, sir. Under the Supreme Court's decision in Vinson, does discretionary principles apply in this case? Yes, I believe it does, in fact. What are you basing it on? I'll tell you what. There is a question as to whether 214.01 invokes the equitable powers of the court. We believe that it does. I believe that it does. The discussion in the Vinson case that's been referred to by the state and that you're referring to by now, is addressing the standard of review. That is, whether an abuse of discretion standard or a de novo standard applies. The Illinois Supreme Court states at page 16 of the Vinson case that 214.01 is statutory. And it says, I quote, it is inaccurate to continue to view the relief in strictly equitable terms. The court goes on to say that 214.01, quote, relief is no longer purely discretionary, close quote. The bottom line is, in my opinion, there remains an element of equitable nature when a 214.01 petition is brought, of a fundamental sense of justice and fair play that can be brought to bear and should be brought to bear, but that that does not necessarily change the standard of review to an abuse of discretion standard. Now, you're also correct, Judge Huston, that there is, it is questionable, this issue and Vinson and what it has thrown in, is making it a little uncomfortable and unclear as to what should proceed. But I am quite certain, and I present to you and I believe that this court has said in the Rockford v. Borgetti case in December 2010, that it agrees that Vinson, quote, never intended to do away with the court's equitable powers to deal with post-judgment petitions. It further states, quote, Vinson did not address either the issue of due diligence or its standard of review. And so the issue had to be with what is, that Vinson court, let me just quickly line it up. That Vinson court is addressing the standard of review. It is not addressing whether or not equity continues to apply. Well, what do you make of this argument in Vinson where the court says it is erroneous, quote, unquote, to believe that section 2-1401 involves the equitable powers of the court? How do you interpret them saying specifically it's erroneous to believe equitable principles apply? Well, again, I, I, I, what, you have to look at what follows there. I, I can grab the case, but I'm pretty sure what follows there is that, again, it is, it is not strictly equitable. Because essentially what, what Vinson is addressing was whether or not abuse of discretion was the standard entirely. And, again, Judge, Justice Jorgensen in that, in her special concurrence, in the Rockford case, and I, I agree with what she says. She states that the standard of review for that 2-1401 petition depends on how the petition was disposed of at the trial court level. So essentially what it's trying to tell you is on the basis of what happened and how we get to the appellate court level, there is, there will be possibly an abuse of discretion standard of review, or there could be a de novo standard of review. Based upon the dismissal under a 265? Yes. And so essentially what Vinson's trying to say is, I mean, if I can just try to boil it down, Vinson's trying to say, hey, you know what, before the statutory 2-1401 was put into place, this was based on common law rights, and essentially we felt like it was equitable, it was purely equitable. And so we were looking at the trial court's discretion, and at that case there was only an abuse of discretion standard. And so now they're saying it's not just equitable. There are times when it is abuse of discretion and there was a potential equitable view, and that would be then the review that you would use in the appellate courts. There are other times, however, when, you know, if it's a void judgment, if it was dismissed or granted with respect after filing an evidentiary hearing, if it was dismissed under 2615, there are certain times where it is going to be de novo. So essentially it was trying to kind of push back the fact of 100% equitable nature, 100% abuse of discretion is the standard of review. And I'm pretty clear that that's essentially, I think, where it's going to fall down. But I do recognize that there is a little bit of a split among the circuits, but I think that's how it falls out. Okay, continuing. So I think, let's see, you had asked about the ability and whether that his filing and so on and following up with the motion to reduce qualifies as due diligence for purposes of a 2-1401. And I recognize that's a, you know, that's a good question, and it is a tough issue. But essentially what I think is when you look at it with respect to diligence, you know, the point is, is that litigant attempting it? Are they pushing? Are they pressing? Are they in court? Are they trying to assure that they can obtain relief? And when we look at what's happened here, the record is clear that as soon as the appellant was made aware that this judgment had been entered, he was there. He was in court. He was pushing it. It turns out, I should say that, and to speak to you from the same point of strategy, you know, the belief was that in trying to help the appellant manage his costs, his attorney's fees, to try to be expeditious in the timing and get things done, as well as to make economical use of judicial resources, the intent in not filing an amended motion and not filing a 214-01 petition. That would be a logical question. What was the reason for the delay in filing those things? Yeah. It was that the expectation was that, and the strategy was essentially to assist the respondent in providing details of his financial situation and to work with the other side to then come to an agreed order, hopefully, that would address, you know, recognize his financial situation. So we provided a respondent to discovery. We provided financial statements showing, you know, his hardship, showing the pre-foreclosure that his home was in, showing the four other children, older children who were, you know, older than these other two, okay, and who lived with and in the home of the respondent appellant. So that was essentially it. And then at a, clearly, if the parties can't agree and we can't come to, we can't figure out, hey, what's an appropriate number that everybody's comfortable with, then you have to then, of course, have a hearing and present those things to a court and have then that independent arbiter determine and say what the support amount is going to be. Now, don't you need to have a meritorious defense to proceed and be successful under a 214-01 petition? Well, with respect to the – yes, Your Honor. So the fact that he had other children, is that necessarily going to reduce the rearage or the support payment? It certainly could. With regard to the having to have a meritorious defense matter of law, I mean, under Callahan, the inquiry following a 2615 dismissal is not as the state asserts whether the allegations would necessarily lead to a different result. When we're reviewing this upon dismissal, the inquiry has to be, are there no set of facts that could be presented upon which relief could be granted? Are there no set of facts? And with respect to that, it's true. Bald, conclusory allegations may not be made, okay? There's a case, Blazek. I don't see the slide, and I apologize. It's a 2010 case, but it was decided in this court. And in that case, the defendant, the allegations that they had placed in their 214-01 petition, there's a bald allegation that said defendant has a meritorious defense. Second one said defendant has been diligent. I agree. Those are bald, conclusory allegations. In this case, the appeal simply states that respondent believes he has a meritorious facts to present under 75045-14B. Are you looking at the affidavit or at the motion? I'm looking at the – well, neither is the affidavit nor his motion goes any deeper than simply stating that he believes he has a meritorious facts to present under 75045-14 that would reduce the amount of payment he would be obligated to pay. That's all you say. Yes, ma'am. That's all he says. Yes, ma'am. How is that a meritorious defense? Well, certainly it is difficult to – I mean, it is essentially letting them know that we believe that there are factors under 750. Right, but didn't you just cite the case saying you need more than that? You need to have some specifics to show that he's going to be successful or that there's a possibility, good possibility, he's going to be successful. Yeah, should the 214-01 be successful on the 214-01. That isn't what I said. What I said was that there has to be – it has to be that there's no set of facts that could be presented. And what we have presented is not just Paul conclusory allegations. He has said, and looking at the affidavit, he says, look, I've got significant hardship, there are a number of obligations, I've got other children, and so on. And I believe that – I mean, without then having had an opportunity to bring additional evidence and to really lay those things out into the trier of fact, I believe it was premature to not be allowed to present that. And I do not believe that the allegations that have been made, including those that are shown in the supporting affidavit, that they are just bald and conclusory. So you believe that the 2615 was premature? Yes, ma'am. Absolutely. Absolutely. Counsel, just to try and clarify your position, and maybe it's a hybrid, is it your client's position that he should not be required to pay the child support, or is it the amount that's in dispute, or both? What is the meritorious defense going to? What issue? Right. It is that with respect to the amount for the prospective support, with regard to the retroactive support, which was $31,000 or something all the way back, it is that there are a number of factors. There are factors that you look at with respect to how much he had been providing to the mother, the petitioner. It is also whether or not there had been prior cases that had been brought. Essentially, she had brought a case against him two years earlier and dismissed it in Cook County. I believe it's two years earlier. I know it was earlier. But anyway, she had brought a case against him in prior opportunities in Cook County. She had dismissed that one. And then a couple years later, whenever I was filing the new page. So the point being, it is a hardship and it is improper for her to receive the benefit of, as though this was the first time she had come into court, to obtain this relief. And that it should not have been granted all the way back to the distance that it had been because of the fact that, clearly, had it had something been ordered two years prior, the amount of the retroactive would have been significantly less. As well, he could have been making payments under the statutory guidelines. Because recognize, he was paying for his children. So it's not an issue. And so that's the other piece, was that, you know, the other thing tied to the strategy, which is, okay, well, you know, he recognizes that. And further, he has some issues whether or not one of the two children was, in fact, his, and that those issues were raised. But nevertheless, he is not someone who is looking to not pay the child support for his children. So this thought about, well, you know, why don't you just run it in there and attack him that thing and, you know, say, well, I'm trying to put an appropriate amount in place. Because he says, I don't object to paying for my children. That I do. I take care of my kids. Okay. But I'm not. This is too much. And I wasn't before the court. I was told that, you know, that they would not advance this thing. I talked to, you know, my partner. I talked to the children's mom. Let her know that I wasn't going to be there. I expected. And she told me that they were going to drop this case, that she was going to tell them that I had been paying. And then he heard nothing else. So did he follow up? He did not follow up, Your Honor. He did not follow up until he actually received a – Until they were ready to garnish his wages. Until they were, in fact, garnishing his wages. That's correct. That's correct. We have nothing further to discuss at this point. Time is up? Okay. You have time, everybody. Very good. Thank you. Ms. Forman. Morning. Morning. We believe that the petition was properly dismissed, that it doesn't state a meritorious defense, and that it does not state a due diligence. We spent a lot of time talking about due diligence this morning, so I think I'd like to jump in there. Do you think it was a proper procedure to proceed by way of a 2-6-15 on a 2-14-01 petition? Yes, I do, because that is an issue that can be decided as a matter of law if there are not facts that could support the entry of a 2-14-01. If you could see it both ways. Is that set forth in Vincent itself? Yes. Does Vincent recognize that you can have – Yes. It's like a complaint, and it can be dismissed for failure to stand by. Or there's no evidence being heard. Which is – I think if you look at everything that's presented here, there's nothing that could establish the exercise of due diligence. And so in this case, the 2-14 dismissal was appropriate. So what would our standard of review be here? I believe the standard of review is de novo, that Vincent reexamined the standards, and the standard now would be de novo. Does the other side agree that it's de novo? I would think they would, because abuse of discretion would be a higher hurdle for them to overcome. Well, that's perhaps best addressed to Ms. Price, but it seems in their interest to have it de novo standard. Let me switch gears on you a little bit and ask you a question that hasn't surfaced yet. Obviously, it would be a position that Vincent is controlling, I would think, on the facts of this case. And Ms. Price talked about distinguishing Vincent. But, you know, when I was looking at Vincent, that was a case where arguably the holding was in a manner where the sentence was void. So basically it was a petition, 2-14, vacate a void order. A void order, of course, would not be subject to due diligence, meritorious defense, because it's void. That's not the case here. So, you know, if we apply the precedent in a narrow sense, why does Vincent necessarily control this? Just in terms of the standard of review? No, in terms of equitable principles. In terms of equitable principles. If you cite Vincent, and it does, I agree, talk about equitable principles, you can read it as saying it doesn't apply in 2-14-01. But on the facts of Vincent, that was a void situation. This is met. So she maintained the argument that Vincent doesn't apply here because that issue, the holding, the judgment was void, whereas this case it's not void. Two things I'd like to say in response to that. One is that Vincent is not actually the Illinois Supreme Court's last word on this. That's a case called Haley D. And there the court says the only time, the significance of equitable principles, really, is that when you're looking at it more equitably, the due diligence requirement can be relaxed. And Haley D. says the only time due diligence need not be shown is when an order is alleged to be void. So I think taking that statement, it's a pretty clear representation that the court is not really leaving room for equitable considerations. I think that there are decisions of this court that are still kind of evaluating and debating, and no decisions have had a chance to really take into account Haley D. I also think that that debate, that discussion is somewhat beside the point here because even if there were some room for equitable principles, which I don't believe that there is, this would not be an appropriate case for the exercise of equitable principles. And why not? Because that's really something. That's really the overarching question. Is this a case where equitable principles we could apply? If not, why not? Because they really require a showing of something more than I didn't get my day in court. Some showing of some fundamental unfairness, something really unfair, unjust, unconscionable. And I think as I go and talk about what happened here concerning due diligence, it becomes clear that nothing like that happened. I mean, this was a case where the father knew that a recommended support order had been entered by the ALJ. He had gotten notice of that. He was told of the next court date. He didn't show up at that court date. He didn't object within the statutory time period. He didn't monitor his case. And putting all that aside, he did come in. But then there's, from the time he obtained counsel, there's still an eight-month delay in which they just simply pursued a remedy that is not the rough equivalent of 214-01. It does not have anything to do with 1401. So that doesn't provide them a reasonable excuse. So this is not the type of situation, because you really need an extraordinary situation to relax the due diligence requirement. And so that's not what we have here, even if there was still some room to consider those type of principles. Do you disagree, and I would assume you disagree with your opponent, that the 214-01 petition did not allege a meritorious defense? We believe that it doesn't allege a meritorious defense. I think their defense was that, hey, look, I have other kids. This is going to be a hardship. Based on the support standards, support guidelines, I might be able to pay less because of the number of kids that I have. How is that not a meritorious defense? I think the operative word there is might. And the case law that talks about 214-01 and what a meritorious defense is states the standard as it's one that if believed, you know, so you get a chance to establish it, but if believed it would defeat the plaintiff's claim. And I think that the would is intentional because it's showing there's a policy, of course, favoring the stability of judgments. So you want something that, if it turns out to be true, is pretty highly likely is going to change that judgment. And here, what they wanted to put on could possibly alter the judgment, but I would say it's really no more than speculative. And that's because, excuse me, I have a sip of water here. Take your time. What they wanted to put on was essentially evidence to deviate from the statutory guidelines. They wanted to put on evidence of the father's financial resources and needs in light of the fact that he has four other children. And those are factors that the court could consider, but the support order as it is is set to a guideline amount that goes with the two children that are the subject of the order. And deviating from the guidelines is something that a court has discretion to do, but that discretion can't be exercised lightly. There really have to be compelling circumstances. So while it's possible that the court could have heard evidence and said, well, maybe some reduction is called for, that's far from certain. And I think it's too speculative to establish a meritorious defense as that's conceived in the 21401 context. And there's a coda that goes with the retroactive support component. About $30,000 of this judgment is for retroactive support going back to the birth of the older child. That's about a three-year period. And then there's also a forward-going component. But going for that retroactive component... That's not a defense. You consider other, under the Parentage Act, there are a number of other factors that you consider, whether the father knew of the existence of his children, was he involved with the children's lives, had he been providing informal support, and so on. And that's the part of the petition where they simply say, as to the retroactive support, we believe there's a meritorious defense. And there are no facts developed that address any of those factors with any specificity. The most specific things they say is, this will be a hardship when there are four other children. Now, I would suggest that that could be viewed as factually insufficient as to the support order in general, because you're still not saying, why should this matter? What is your income relative to these four other children? How much are you spending on supporting them, and so on? So it's still very general. But in any event, I think that the important point there is it's really simply speculative that if this evidence were heard, it would affect the judgment. So that's the meritorious claim or defense component. There's also the due diligence component. Do they show any due diligence? And why wasn't due diligence shown in summary? Well, there are two components. The first is there's about a four-month period from when the judge enters the default support order, November 2009, to when the father comes in on the pro se motion to modify. So there are four months there. Well, you just learned of it, didn't you? Well, he says that he did not receive the order as judicially entered in November of 2009. He says he did not receive it, and I think that that does have to be taken as true on a motion to dismiss. However, there's also some statements that were made that this wasn't sent, and that's actually not correct, or it seems not to be correct, because there is documentation in the file of the DuPage County state's attorney that makes it look like a letter went out to both the mother and the father in December of 2009 saying, attach police to the November 16, 2009 order. And that, my dilemma there is that that is not in the record. That is not what? That is not in the record. And I'm bringing it up because I would not want this court to make some type of finding that, I think it would be unfortunate if the court makes some type of finding that the order as judicially entered was not sent, since there seems to be evidence that it was. But here, I think it's more important to look at, well, he does allege whether it was sent or not might not be that important, because he's looking at, he says he didn't receive it, and since he does allege that in his affidavit, I think we have to assume he didn't receive the order as judicially entered in November 2009, and then look at, can there be due diligence for that component? And there's a whole other type of component that I'll get to, but for that four months, can he establish due diligence assuming he didn't receive the November 2009 order? And I think that the answer there is no, because we can look at, well, what did he know? And he knew that there was going to be a hearing on August 10, 2009, before a hearing officer. He was notified of that and warned that if he did not show up, a default could issue. He does not show up at the August 10, 2009 hearing before the hearing officer. The hearing officer takes evidence, and the hearing officer enters a recommended support order. So all the information, here's your net income, here's the guideline amount, here's what you're going to pay per week, all of that happens at the August 2009 hearing, and it is in the record. It's absolutely clear that he receives notice of what happened at that hearing. He gets a notification packet by certified mail from the Department through the State's Attorney's Office that includes this recommended support order. It informs him he's in default. It informs him that he has a statutory right to object within 14 days back of getting that August packet. And he received that? He received that, and that's not disputed. And it informs him that the order is scheduled to be formally entered by a judge on November 16, 2009. So all that is sent to him, all that is known. And so what he doesn't do, he doesn't file an objection within 14 days of getting the information packet on August 27. So he didn't file the recommended procedures in the information packet he received? Well, those recommended procedures are by statute. The statute says you send the ALJ's recommended order, and then a person who hasn't appeared gets 14 days to object. And he did receive that? And he received that. He didn't object. He didn't then appear on the November 16, 2009 court date, which he had notice of. And at that point, I mean, the support order is already there. It's simply signed by a judge and takes effect. And he did not, assuming then he did not get the November 16, 2009 order, which does appear to have been sent in December 2009, he doesn't monitor his case in any way to see what happened. I mean, he had noticed that there was a court hearing on that date. He has a recommended support order in his hands that looks pretty official. It's got all the information about here's what you're going to have to pay and when. And he does not follow up to see if anything further has happened until he gets, until the income withholding starts. And then he comes in on the pro se petition to reduce. So I would say for that time period, that doesn't establish due diligence. But ultimately, even if perhaps that could be viewed two ways or some lenience is given there, there's still a 10 month period after that before the 214-01 takes effect. And if we even shorten that to when counsel is retained, there's an eight month period. And the reason given there is basically the idea that they were doing something. They were proceeding on the pro se petition to modify because they wanted to put on their evidence to ask for a deviation. And the theory is, well, we thought that would have been a good enough procedure because it's kind of a rough equivalent to 214-01. We would have been satisfied with that. Go ahead. And so I would say that that is not a reasonable excuse for not proceeding with the 214-01. And that is because I think it's useful, again, to look at retroactive and prospective support. Most of that support order was a retroactive component. The $30,000 was all retroactive. No relief was possible on a motion to modify because it's a really very well-established tenet of family law that a support order can only be modified going forward from the time a petition for modification to modify is filed. So if they wanted to attack that $30,000 retroactive support, there wasn't anything that the judge was going to be able to do for them. So I would say that's not a reasonable excuse because the procedure that they elected to use didn't provide them with any relief for most of what that judgment was about. Would it be proper in ruling by this court to sever the $30,000 retroactive and look at whether or not there was a meritorious defense in due diligence with respect to the support order going forward? That's an interesting question. That's actually something that I hadn't thought about. And after this argument, I'll probably think of a better answer. But it doesn't strike me as any reason why the court couldn't consider the aspects of it separately. I think that there are reasons why even just looking at the prospective support component, I don't believe that there's a reasonable excuse shown for the delay. And that is because if we just consider that component of it, I mean, actually, you could say, yeah, the 214-01 is looking at the whole thing. And because I think maybe the better answer is because it's really looking at the whole judgment, vacating the whole judgment. And because most of that judgment could not have been affected by the procedure they used, it's just not a substitute, and diligence isn't shown, and that's the end. And there should be no severing and looking at the parts differently. But even if we do that, just looking at the prospective part, there's really no due diligence. There's no reasonable excuse there because I'd say they're trying to use the 214-01 as almost kind of a substitute for an appeal. And they suggest, well, the court, we wanted to put this deviation evidence before the court, and the court wouldn't hear our evidence, so we were kind of stuck. But that's not exactly what happened. If you go back and look at the proceedings, this is more of an end run around a circuit court ruling that they didn't like. Because what the circuit court did was they wanted to put on this evidence, here's the father's financial circumstances, there's these four other kids. And the circuit court ruled, I think that's appropriate evidence. You're allowed to put on that evidence. The court was willing to hear the evidence, but the court put some conditions on that that the respondent didn't agree with and may have been incorrect. What the court thought was that they needed to file a more specific petition to modify. That there should have been something in the petition to modify that put the other side on notice that this was really going to be about deviation. Is there anything that would preclude them from going forward in the future in a motion to modify? No. And what the court said here was that you need to file a more specific petition to modify. And when you do that, though, you're not going to retain this March 10, 2010 filing date. If I order any petition to modify, it's only going to go back to the date of your new petition to modify, which now we're in November 2010. So it will be sometime around November 2010. All right. I'm going to stop you because your time has passed, but I appreciate your argument. So for those reasons, we ask that the court affirm. Thank you. Ms. Price, come on. Thank you. And if you need a few minutes over, I'll let you go. Yeah. All right. Well, Your Honor, I believe that. What damage is done, really, if your client is not precluded from going forward with a motion to modify? Because it sounds to me that the whole basis of your 214-01 is equitable and that you can address that issue with the trial court with respect to modifying the order. I'm not sure I followed your question. I apologize. You can always go into court on behalf of your client and file a motion to modify the child support that was ordered, correct? And that's basically what you were asking in the 214-01 petition. Well, what happens, Your Honor, and the reason that equity needs to apply here, the reason that you really need to think about just never allowing this guy to present his particular circumstances, allowing for a default order to reach into his pocket on a regular basis and take from him without giving him an opportunity to stand before the judge and say what his side is. We have a default order here. Wait, if I get that, I apologize. But, I mean, this is because what happens here is we start saying, you know, it needs to be unfair, unjust, unconscionable. Of course, we have that here. This is hugely unfair because what happens? Do you have that? Yes, we have that. Because what we were required to do was we were required to withdraw that motion that he had filed, which would have taken him back to at least March 2010. We were here at the end of the year. It had been over a year that had passed with respect to that. There was significant arrearage that had been raised, as well as there was also the prospective, and he had been paying this, and he had come in timely. And the judge said, new judge. All right? So we basically, we present this thing to the judge. He says, you know what? I'm not going to do that. I'm not going to listen. I'm not going to listen to the best evidence that you think you have for going ahead and addressing his issue with respect to how much he's got to pay and then giving you relief back to March of 2010. You can do it, but I'm not going to listen to the best case that you've got. You want to do that? You need to do a 214-01. I gave him a motion to reconsider. I said, Your Honor, I think that you really need to listen. We can do this with this basis. I wouldn't have, I mean, because clearly I felt horrific because, gee, I could have amended this, but I'm trying to manage my client's money. I'm hoping that we will be able to come to some agreement. We haven't, and now here we are before the judge. Ms. Price, let me ask another question. Go ahead. We can all agree that to be entitled to relief under 214-01, due diligence is an element. Yeah. So my question very simply is, at what point does due diligence have to be shown? Is it when he knows that the order has been entered, it's 14 days, he's going to court, or does the due diligence begin after he learns his way to the second court? As I said, you know, Paul says due diligence is basic on the circumstances. What is reasonable under the circumstances with respect to what you see? And essentially in none of the cases that we see where diligence has not been found, the litigant is not before court. The litigant is not there. They are taking their time doing nothing. Who knows what. He was before the court. He was in there in front of the court. What I'm asking is, and I understand it's an interesting application, but I'm asking that the diligence and the activity that he was trying to do in connection with that motion to reduce be counted as diligence in connection with his 214-01. And I know you're saying, well, how could it be? It's not, it wasn't a 214-01. But, I mean, he was doing what 214-01 requires, which is come in here and tell us what are the reasons why this thing that's been entered. And you've got to remember, this is a default order. Okay? This is not just, I mean, entry of a default judgment is a drastic remedy. It should only be used as a last resort. I mean, the law prefers that controversies be determined according to the substantive rights of the parties. He has never had this opportunity to make a presentation of his substantive rights. And further, with respect to that, and as we say, with Domingo, Domingo, a case cited by the state, there was an evidentiary hearing in that Domingo case. And also, it talks about the denial of the petition. It shows that it's going to be unjust or fundamentally unfair. And we propose and submit to this case that it is fundamentally unfair for him to not be allowed, for him to, now he's been pushed to create something he can never go after, this $30,000 that's been issued with respect to the retroactive support. And that's not appropriate. And that's, because he does have meritorious offenses in claim. And that was regarding the thing that she notes about this letter. It's not that he did not receive it. He was never sent that actual order. The statute requires that it be immediately sent, the default order that when it's actually entered, because anything could have happened on November 16, 2009. Isn't it incumbent upon him to find out what happened? Your Honor, you know, in a perfect world, that's what happens. In a perfect world, in a perfect world, everybody does. They follow up. In a perfect world, they call when they say, and they contact the right people when they can't make it. In a perfect world, they follow up when they don't determine what happened. But what we do have, and we do have, I believe, an appropriate and reasonable excuse for him not following up, which is he had a conversation with the other litigant where he said, listen, I can't get out of work. I can't make it. You know, I've got to keep working to make this money. If I don't go to work, I don't make money. How can I pay this child support? I need to go there. If you would let them know, and she said, absolutely, I will. I would tell them that, you know, you're paying me child support, and this thing is going to go away. He then doesn't hear anything, which for the rest of us, for the rest of us, we would say, well, you know, I want to see something that says it's gone. Well, you know what? In a perfect world, we don't have litigants who are intimidated by the courts, who want to put their heads in the sand and hope that, you know, everything would just go away. I mean, realistically, that's the way it works, John. And in a perfect world, the other thing, you know, I'd like to tell you is that, you know, because the state likes to say, hey, you know, there you are. She was presented with the opportunity to either, hey, your best evidence, you can't put it on, go ahead and finish your hearing and appeal. You know what? It's hard enough for these guys to find the money, the wherewithal, and so on, to even get an attorney at the lower court. The appeals, I mean, this may as well be the land of Oz. I mean, I'm sorry to say that. I know you guys are there and this is your everyday thing. But realistically, the trial court isn't for most of the litigants. I just want to talk to you real quickly. Go ahead. You cited Dominguez. You indicated that Dominguez is something that... Domingo. The Domingo case is something that in yours, to your benefit. But didn't the Domingo case say that the 214-01 petition is not intended to relieve the litigant of the consequences of his own mistakes or negligence? Like I said, with regard... Or that of his attorney? If you don't see if it is not fundamentally unfair or unjust. Is that what it says? Yes, it is. It says, in fact, that not only is it that... It says, yeah, okay, maybe there's some issues with regard to equity and so on. And we really think equitable doesn't apply anymore. But even if it did, we need to see that the denial of the relief is fundamentally unfair and unjust. And I submit that it is, in fact, in this case. Because he has never had an opportunity to be able to have his stay in court. This is a default order situation. This is not where he was presented. With respect to the final thing I say with regard to this, where it's, you know, your own negligence and so on and failure to do whatever. In general, that has to do with when the parties were actually in court. Okay. I'm pretty sure that Domingo involved... I'm pretty sure Domingo involved a situation where there was a... Is it Domingo? I'm getting confused. If I could... Never mind. Domingo, in my opinion, involved where the order that was entered was entered in connection with the litigant who was attacking it. That litigant was active or either, you know, went to sleep and missed the date and things like that and got an order entered against them. But nevertheless, they were involved. In this case, the order that got entered, they were not active and involved. It was not a neglect. It was not a failure. It was a neglect based on failing to appear. But we do see why he did not come, and we do see why, as well, when he never was sent the order after it was actually entered, which he had a right to expect and it wasn't done. Great, you know, but we don't live in a perfect world, Your Honor. And so what I say is that in this imperfect world and in this case, that equity presumes and requests that the premature dismissal of this 214-01 petition should be reversed. Thank you, counsel. Thank you. The court stands in recess, and the decision will be entered in due course. Thank you, Your Honor.